UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTHONY K. IT,

               Plaintiff,

v.                                                               Case No. 19-cv-0779-bhl

MILWAUKEE COUNTY,

               Defendant.

## DECISION AND ORDER

      Plaintiff Anthony K. It is representing himself in this long-pending §1983 case. After numerous delays, including several adjournments granted to facilitate Plaintiff and his professed inability to litigate, discovery was finally set to close on February 1, 2021. Two days after the discovery deadline, on February 3, 2021, Defendant filed a motion to amend the scheduling order and to compel discovery based on Plaintiff's failure to cooperate in his deposition. Dkt. No. 47. Given the extreme nature of Plaintiff's latest misconduct, the Court concludes that a sanction of dismissal is warranted.

## BACKGROUND

      Plaintiff filed this case nearly two years ago, on May 24, 2019. In an initial July 12, 2019 screening order, the Court allowed Plaintiff to proceed on a claim against Milwaukee County under the Emergency Medical Treatment and Active Labor Act. Dkt. No. 7. After Defendant answered, the Court set a discovery deadline of January 13, 2020, and a dispositive motion deadline of February 13, 2020. On September 16, 2019, Plaintiff filed a motion to amend his complaint, which the Court denied because his proposed amendments failed to state a claim or were unnecessary.

Dkt. Nos. 16, 17. A few weeks after discovery closed, on January 31, 2020, the Court granted in a text-only order Defendant's motion to extend the dispositive motion deadline to April 13, 2020.

On February 5, 2020, Plaintiff filed a motion to appoint counsel. Dkt. No. 19. The Court denied his motion, observing that Plaintiff "has ably litigated many cases in this court…[and] has consistently demonstrated that he is able to recall facts, locate relevant case law, and communicate his thoughts and arguments to the court." Dkt. No. 23 at 2. The Court also noted that, "[a]lthough he has well-documented mental health issues, when he has regular access to his medication and regular interactions with his mental health providers (which he does when he is incarcerated), his writing is clear, well organized, and persuasive." *Id.* at 2-3.

On February 28, 2020, the Court granted Defendant's motion to reopen discovery and set a discovery deadline of May 28, 2020. Dkt. No. 25. The Court also extended the dispositive motion deadline to June 29, 2020. About a month and a half later, Plaintiff filed a motion for leave to file an amended complaint. Dkt. No. 31. On April 21, 2020, in a text-only order, the Court granted Defendant's motion to extend again the discovery deadline. Defendant explained that Plaintiff was scheduled to be released from prison in late June and Defendant preferred to depose him in person, if possible. The Court extended the discovery deadline to July 27, 2020, and the dispositive motion deadline to August 29, 2020. On April 22, 2020, the Court denied Plaintiff's motion for leave to amend his complaint because his proposed amendments failed to state a claim. Dkt. No. 34.

Plaintiff was released from prison at the end of June 2020, but on July 22, 2020, he notified the Court that he was back in custody and housed at the Milwaukee Secure Detention Facility. Dkt. No. 35. Plaintiff also filed a motion to extend the case deadlines and a motion to appoint counsel. In response, counsel for Defendant notified the Court that one of his colleagues had

2

recently attempted to depose Plaintiff in another case (Case No. 18-cv-1289) but could not complete the deposition because Plaintiff had claimed his mental health issues prevented him from participating. Dkt. No. 37. Defendant suggested that the Court stay all deadlines as the Court had in the other case filed by Plaintiff, Case No. 18-cv-1289.

In ruling on Plaintiff's motions, the Court observed the following:

> Plaintiff is an experienced litigant. His writing is clear, his thoughts are organized, and his arguments are well-supported and logical. That said, I am familiar with Plaintiff's mental health condition and know[] that, when he is not consistently taking his medication or receiving treatment, his condition can interfere with his ability to think clearly and communicate. Because Plaintiff is capable of representing himself when his mental health condition is being addressed, I will deny his motion for the appointment of counsel. I will stay the deadlines to allow Plaintiff time to, as he says, "regain a semblance of competence and ability to litigate this case."

Dkt. No. 38 at 2.

A few weeks later, on August 13, 2020, Plaintiff informed the Court that, although he was receiving treatment, his condition had not yet stabilized and he continued to lack the capacity to resume litigating this case. Dkt. No. 39. Despite his assessment of his capacity to litigate, about a month later, he began filing other lawsuits. On September 11, 2020, Plaintiff initiated *It v. Fuller*, Case No. 20-cv-1425 (E.D. Wis.). On September 28, 2020, he initiated *It v. City of Milwaukee*, Case No. 20-cv-1503 (E.D. Wis.), and *It v. Norris Adolescent Center*, Case No. 20-cv-1504 (E.D. Wis.), and, on September 30, 2020, he initiated *It v. Does*, Case No. 20-cv-1516 (E.D. Wis.). That same day, he also initiated *It v. Does*, Case No. 20-cv-908 (W.D. Wis. Sept. 30, 2020), in the Western District of Wisconsin, although the Court did not know about that case at the time.

About a week after Plaintiff filed his fifth new case in just over two weeks, the Court noted that Plaintiff's activity suggested that his mental health condition was no longer interfering with his capacity to litigate. Dkt. No. 40. The Court ordered Plaintiff to provide an update by October

3

23, 2020, regarding whether he could resume litigating this case and warned him that unjustified and unnecessary delay would not be tolerated.  Plaintiff did not update the Court as ordered, so on November 3, 2020, the Court informed Plaintiff he had one final opportunity to explain whether he could resume litigating this case.  Dkt. No. 41.  The Court warned Plaintiff that, if he did not respond by November 20, 2020, the Court would dismiss his case for failure to prosecute.  Three days after the deadline, on November 23, 2020, Plaintiff informed the Court he was able to resume litigating this case.  Dkt. No. 42.

      A couple weeks later, on December 8, 2020, the Court held a status conference via Zoom to discuss moving the case toward resolution.  Defendant wanted to depose Plaintiff.  Plaintiff, who was coherent, calm, and respectful during the conference, explained that he had other cases pending and he anticipated being transferred to a different institution.  He asked the Court to set a dispositive motion deadline in March or April.  The Court acceded to Plaintiff's request and set a discovery deadline of February 1, 2021 and a dispositive motion deadline of March 15, 2021.

      On January 4, 2021, Plaintiff moved to supplement his complaint.  Dkt. No. 45.  At the end of his motion he stated, "I now have an extreme resentment for the black community and the minor population and … I <u>will</u> target civilians for murder in the future especially if I am not compensated or given an opportunity to hear this claim in federal court."  *Id.* at 3 (emphasis in original).  The Court denied Plaintiff's motion on January 15, 2021, and notified the U.S. Marshals Service of Plaintiff's threats.  Dkt. No. 46.

      This brings us to Defendant's pending motion for an extension of time and to compel discovery, which Defendant filed on February 3, 2021.  Dkt. No. 48.  Defendant explains that Plaintiff's deposition was scheduled for January 15, 2021, but had to be rescheduled because of

4

Plaintiff's disruptive and threatening behavior at another deposition earlier that day.[1]  *Id.* at 4.  The rescheduled deposition was held on January 25, 2021, via Zoom.  Defendant's counsel states that, about thirty minutes into the deposition, Plaintiff began to display unusual and threatening behavior.  *Id.* at 5.  For example, he threatened "[t]o get a nuclear bomb to blow Milwaukee up, but only to hit the blacks on this…."  Dkt. No. 49-3 at 27.  He also said, "So as soon as I get out of here, I'm going to get an apartment across the street from Columbia Correctional Institution and I'm going to get my gun back…. Yeah, and then I'm going to go to target practice with my concealed carry weapon…. Then I'm going to get an illegal gun and I'm going to follow those visitors of those CCI inmates who think they can call you names, bitches and ugly, and I'm going to kill their visitors with a gun."  *Id.* at 27-28.  The deposition was discontinued shortly thereafter.  Because Defendant was not able to reschedule the deposition before the February 1 discovery deadline, Defendant seeks to extend the discovery and dispositive motion deadlines.

**ANALYSIS**

As the lengthy Background section of this Order make clear, Defendant and the Court have made significant efforts to allow Plaintiff to litigate his claim and have tried to accommodate his mental health needs and requests for additional time when he believed those needs required delay.  Defendant has repeatedly attempted to take Plaintiff's deposition and has patiently put up with numerous delays occasioned by Plaintiff's conduct.  The Court has tried to balance Plaintiff's needs and Defendant's right to timely resolution of the claim against it.  The Court has stayed the

---

[1] About twenty minutes into the deposition, in response to the court reporter asking him to repeat his answer, Plaintiff became enraged and yelled, "You fucking with me.  I'm coming for you.  You hear me? – bitch.  I'm going to murder you.  I'm going to murder your kids." *Plaintiff v. Duckert*, Case No. 18-cv-1289, Dkt. No. 71-2 at 14 (E.D. Wis.).  Plaintiff also threw a chair at the computer monitor before officers ended the deposition.

5

case entirely and granted several extensions of the deadlines in the scheduling order, all with the goal of allowing Plaintiff the chance to pursue his claims

But the Court's patience is not unlimited, and neither is Plaintiff's license to use his mental health problems to engage in inappropriate behavior. At this point, Plaintiff has demonstrated that he is able to assess his capacity to litigate and can communicate with the Court about his capacity even at times when his mental health has declined. When Plaintiff asked for a stay of proceedings until he was competent to proceed, the Court stayed the case and delayed discovery. Shortly thereafter and while this case remained stayed, Plaintiff initiated four new lawsuits in this district and one new lawsuit in the Western District. Only after the Court threatened dismissal for failure to prosecute did Plaintiff respond (late) to the Court's requests for information about his ability to resume litigating this case. Plaintiff assured the Court that "he has adjusted and is now able to proceed with and prosecute the case…." Dkt. No. 42.

The Court also believes that Plaintiff has shown the capacity to represent himself well in numerous cases. He has communicated his arguments clearly and concisely. And, when his mental health needs are *not* being addressed, he has never had trouble informing the Court that he is struggling and needs time. *See, e.g.,* Dkt. No. 39. As such, when Plaintiff informed the Court that he was ready to resume litigating, the Court took him at his word. Plaintiff's demeanor and conduct at the Zoom conference two weeks after Plaintiff said he was ready to resume litigating confirmed to the Court that Plaintiff's mental health needs were being adequately addressed and that he had the capacity to represent himself.

The Court acknowledges that Plaintiff has mental health challenges but finds that his increasingly violent behavior is inexcusable and goes beyond the pale of acceptable conduct even

6

for a litigant with mental health challenges.[2]  In a recent motion, Plaintiff threatened to murder civilians if he was not allowed to proceed on a claim.  Then, a couple weeks later, in a different case, he threatened to kill a court reporter and her children after she asked him to repeat an answer.  And, a couple of weeks after that, he threatened to stalk and shoot the visitors of inmates who had called him names.

"District courts have inherent authority to sanction litigants for abuse of process, up to and including dismissing the lawsuit." *Waivio v. Board of Trustees of Univ. of Ill. at Chicago*, 290 F. App'x 935, 937 (7th Cir. 2008).  The Seventh Circuit has explained that the "severity of a sanction should be proportionate to the gravity of the offense."  *Id.*  "Considerations relevant to proportionality include the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and weakness of the case." *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019).  Further, while dismissal as a sanction should be used sparingly, dismissals may be appropriate when there is a record of delay or when a plaintiff has engaged in misconduct such as making improper threats.  *Waivio*, 290 F. App'x at 937 (citations omitted).  As the appellate court noted, some behavior goes "beyond the bounds of what a district court could be expected to indulge." *Id.*

Plaintiff's behavior falls into that category, and the Court finds that dismissal is justified.  First, Plaintiff's misconduct was egregious.  In addition to delaying an already long-pending case by allowing the deadlines to remain stayed despite having regained his capacity to litigate, Plaintiff leveled violent threats against many people, including children and random strangers.  Further, the Court considered lesser sanctions, such as a fine, but does not believe that any sanction short of

---

[2] The problem is Plaintiff's threatening behavior and violent outbursts, not his capacity to litigate his case.  Counsel is unlikely to have any impact on Plaintiff's willingness to control his temper or refrain from making violent threats.

dismissal will be effective. Plaintiff is indigent and already owes a significant debt to the Court; adding more to a debt that Plaintiff has no means to pay is unlikely to deter him from engaging in similar misconduct in the future. *See Donelson*, 931 F.3d at 571. Finally, the harm resulting from Plaintiff's misconduct is substantial. Allowing Plaintiff to threaten violence without meaningful consequence will reinforce bad behavior and remove incentives for Plaintiff to conduct himself in a healthy and appropriate manner. For these reasons, the Court finds that a sanction of dismissal is warranted.

**IT IS THEREFORE ORDERED** that this case is **DISMISSED** as a sanction for Plaintiff's extreme misconduct. The clerk's office shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that Defendant's motion to amend the scheduling order and compel discovery (Dkt. No. 47) is **DENIED as moot**.

Dated at Milwaukee, Wisconsin this 1st day of March, 2021.

BY THE COURT:

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.